# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-99-00713-CR

**Frank Tello, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT NO. 98-203, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

A jury found appellant Frank Tello guilty of one count of murder and two counts of aggravated assault. *See* Tex. Penal Code Ann. §§ 19.02, 22.02 (West 1994). The jury assessed punishment for the murder at imprisonment for twenty-five years and a $7500 fine, and for each assault at imprisonment for ten years and a $5000 fine. We will affirm.

Tello and several friends, including Roger Lerma, Carlos Cantu, and Cisco Garcia, were gathered at Cantu's residence in Lockhart on the night of February 20, 1998. There is evidence that each of the named individuals was a member of La Rosa Negra, or LRN, a local gang. During the course of the evening, vehicles occupied by persons not affiliated with LRN drove past Cantu's house several times. The two groups, those in the house and those in the vehicles, shouted taunts and insults at each other. There was testimony that bottles and rocks were thrown at the house. On the last of these confrontations, the vehicles stopped and several occupants got out, among them Henry Silva, Ronnie Valdez, and Chris Baltierra. More insults and challenges to fight were exchanged.

Then shots were fired from the general direction of Cantu's house. A ricocheting bullet struck Silva, who later died.

Tello was convicted for the murder of Silva, and for the aggravated assaults of Valdez and Baltierra. In three points of error, Tello urges that the evidence is legally insufficient to sustain the convictions. We must decide whether, after viewing all the evidence in the light most favorable to the verdicts, any rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981). Numerous witnesses were called by the State and the defense. Several were obviously reluctant to testify. The testimony was sometimes vague and confusing, and there were conflicts among the witnesses' accounts. It was the jury's role to decide the credibility of the witnesses and the weight to give their testimony. *See Bonham v.* State, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984); *Castellano v. State*, 810 S.W.2d 800, 807 (Tex. App.—Austin 1991, no pet.); *see also* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). We will summarize the evidence supporting the verdicts.

When the rival group approached Cantu's residence for the final time, Lerma armed himself with a .45 caliber pistol and told Tello and the others in the house that he was going "to go down the block and start it." Tello, who had a .380 caliber pistol, replied, "Well, if you go, I'm going to have your back." Lerma then left the house and walked across the street. Tello, Cantu (who was carrying a .38 caliber pistol), and Garcia (armed with a shotgun) followed and took up positions in front of the house. As they went outside, Cantu asked Tello if they should shoot. Tello told him, "Go ahead. Go for it."

Most witnesses agreed that the persons in the vehicles were unarmed. The taunts and insults continued as Silva, Valdez, and Baltierra approached Cantu's residence on foot. It appears that the shooting began when someone threw bottles at the LRN members. Cantu testified that he fired two shots in the air after a bottle flew past him. Tello testified that he also fired into the air, as a warning, when the rival group began throwing things. A witness to the shooting, however, gave a statement to the police saying he saw Tello aiming his pistol directly at the rival group before firing. Lerma also fired from his location across the street, and it is undisputed that Lerma fired the fatal bullet.[1]

The court's charge to the jury included instructions on the law of parties. *See* Tex. Penal Code Ann. § 7.02 (West 1994). The court authorized Tello's conviction for murder if the jury found that Lerma shot Silva, either intentionally or while committing an act clearly dangerous to human life with the intent to cause serious bodily injury, and that Tello encouraged, directed, aided, or attempted to aid Lerma with the intent to promote or assist the commission of the offense. Tello does not question the sufficiency of the evidence to support the finding that Lerma murdered Silva. He argues only that the State failed to prove he was criminally responsible for Lerma's conduct.

To establish culpability as a party, the evidence must show that the alleged parties were acting together, each doing some part in the execution of a common design. *Rivera v. State*, 990 S.W.2d 882, 887 (Tex. App.—Austin 1999, pet. ref'd). The agreement to act in a common design may be proved either by direct or circumstantial evidence. *Id*. In determining whether a person participated as a party to the commission of an offense, the fact finder may look to events

---

[1] Lerma's conviction for murder and aggravated assault was recently affirmed by this Court. *See Lerma v. State*, No. 03-99-00827-CR (Tex. App.—Austin Feb. 15, 2001, no pet. hist.) (not designated for publication).

3

occurring before, during, and after the offense, and may place reliance on acts showing an understanding and common design to commit the culpable act. *Id*. at 887-88. The evidence is sufficient where the accused is present and encourages the commission of the offense by words or other agreement. *Id*. at 888.

When Lerma armed himself with a .45 caliber pistol and told Tello and the others in the house that he was going "to go down the block and start it" with the rival group, Tello assured him that he, Tello, would watch his back. Tello, Cantu, and Garcia, each carrying a firearm, followed Lerma outside. When Cantu asked Tello if they should shoot, Tello encouraged him to "go for it." Tello admitted that he took part in the shooting, and there is evidence from which the jury could infer that he fired in the direction of the rival group. From this evidence, a rational trier of fact could conclude beyond a reasonable doubt that Lerma and Tello acted together pursuant to a common understanding or design to shoot at the rival group. A rational trier of fact could further find beyond a reasonable doubt that Tello encouraged Lerma to commit an act clearly dangerous to human life, and that he did so with the intent to promote the commission of the offense. Finding the evidence legally sufficient to sustain appellant's conviction as a party to the murder, we overrule point of error one.

The jury also found that Tello, acting alone or as a party with Lerma or Cantu, intentionally or knowingly threatened Valdez and Baltierra with imminent bodily injury while using or exhibiting a firearm. To support his contention that the evidence does not support these verdicts, Tello refers us to the testimony of Valdez and Baltierra, neither of whom said that he heard anyone threaten to kill him. A threat can be conveyed by conduct as well as by words. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984). From the evidence previously summarized, a rational

4

trier of fact could find beyond a reasonable doubt that Tello threatened Valdez and Baltierra with imminent bodily injury by shooting at them. Under the circumstances shown in this record, even shooting into the air, as Tello admitted he did, could reasonably be deemed a threat of imminent bodily injury. Points of error two and three are overruled.

The district court's punishment charge instructed the jury to treat Silva's murder as a second degree felony if Tello proved by a preponderance of the evidence that he acted under the influence of sudden passion arising from an adequate cause. *See* Tex. Penal Code Ann. § 19.02(d) (West 1994). In his final point of error, Tello contends the jury's failure to find in his favor on the sudden passion issue was so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Meraz v. State*, 785 S.W.2d 146, 154-55 (Tex. Crim. App. 1990); *Rainey v. State*, 949 S.W.2d 537, 542 (Tex. App.—Austin 1997, pet. ref'd).

When conducting a factual sufficiency review, the evidence is not viewed in the light most favorable to the verdict. Instead, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *See Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). A factual sufficiency review asks whether a neutral review of all the evidence, both for and against the challenged finding, demonstrates that the proof in support of the finding is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

Tello and other defense witnesses testified that the LRN members and their friends were not looking for trouble on the night of the shooting, but had gathered at Cantu's residence for a party. According to the defense account, trouble found them in the form of Silva

5

and his companions, who repeatedly drove past Cantu's house, shouting insults and hurling rocks and bottles. Tello said he believed that he and his friends were under attack by an armed mob, and that he fired into the air to deter the attack. We find little or no evidence, however, to support a finding that Tello was acting under the influence of anger, rage, or terror of a degree that would render a person of ordinary temper incapable of cool reflection. *See* Tex. Penal Code Ann. § 19.02(a)(1) (West 1994). To the contrary, the evidence reflects that Tello and the other LRN members deliberately armed themselves and went outside to confront Silva and his companions, fully intending to use their weapons. Having considered all the evidence, we cannot say that the jury's failure to find that Tello acted under the influence of sudden passion arising from an adequate cause was manifestly unjust. Point of error four is overruled.

The judgment of conviction is affirmed

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed: February 28, 2001

Do Not Publish